UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

SEP - 1 2015

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT TO OBTAIN RECORDS, LOCATION INFORMATION, INCLUDING PRECISION LOCATION INFORMATION, CELL SITE INFORMATION, AND OTHER SIGNALING INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE HAVING THE NUMBERS (314) 319-6463 . | ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 4:15 MJ 235 DDN

**FILED UNDER SEAL**

## AFFIDAVIT

Mark J. Biondolino, being duly sworn, deposes and says that he is a Detective with the

Saint Louis Metropolitan Police Department (SLMPD) Bureau of Investigation Homicide

Section duly appointed according to law and acting as such.

Mark J. Biondolino, being duly sworn, deposes and says:

### Introduction

I am a Detective with the Saint Louis Metropolitan Police Department, and have been a

member of the department since February 1996.   I am currently assigned to the Bureau of

Investigation Homicide Section.   During the course of my career, I have been involved in

investigations focused on firearms, narcotics violations, and other forms of violent crime, among

others.

The facts alleged in this affidavit come from my own investigation, my training and

experience, and information obtained from other investigators and witnesses.   As this affidavit

is submitted for the limited purpose of establishing probable cause to locate and monitor the

location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

Upon information and belief, and as explained in greater detail below, the Sprint LLC cellular telephone bearing number **(314) 319-6463** (hereinafter the "**subject cellular telephone**") has been used, and is presently being used, and contains relevant evidence in connection with the commission of offenses involving ongoing violations of, among others, Title 21, United States Code, Sections 841(a) and 846 and Title 18, United States Code, Sections 922(g), 924(c), and 924(j) (hereinafter referred to as "the subject offenses"), by **KANEIL HESS**, and others known and unknown.

The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency(ies) to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information from a cell site simulator, in an effort to locate and monitor the location of the **subject cellular telephone**.

Your affiant further states that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

**<u>Investigation and Probable Cause</u>**

On July 26, 2014, at approximately 3:00 a.m., Curtis T. Williams was found lying face down suffering from puncture wounds to his upper torso. Williams succumbed to his injuries on the vacant lot at 3007 N. Newstead within the City of Saint Louis. The incident and subsequent

2

investigation revealed this to be a homicide, detailed under Saint Louis Metropolitan Police Department complaint number 15-037297.

Following the shooting, the Homicide Section was contacted by and met with an eye witness who observed the shooting and was familiar with events that occurred prior to the shooting.   Among other things, the eye witness identified Kaneil HESS (a/k/a "Neil") as the individual who shot and killed Williams.   Hess and Williams had known each other for over 20 years and, during that time, HESS sold narcotics to Williams.   Further, the eye witness had also previously purchased narcotics from HESS.

In the early morning hours of July 26, the eye witness and Williams were in the area of Newstead between Labadie and Greer.   Williams approached a vacant lot where certain individuals were located.   Shortly after Williams approached the lot, he was shot.   The eye witness observed Williams running across the lot.   Williams was being chased by HESS who was carrying a firearm.   Williams fell to the ground.   HESS continued to fire at Williams as he lay on the ground motionless.

According to the eye witness, in the day or days prior to the shooting, HESS and Williams had been involved in an argument over a discrepancy over one or more previous drug sale(s). This argument occurred between the two men via cellular telephone devices.   Williams utilized a cellular telephone with number (314) 339-9894.   HESS utilized the **subject cellular telephone**. The eye witness actually participated in the argument.

Probable cause exists to believe that the **subject cellular telephone** contains evidence related to the murder of Williams, including, but not limited to, messages exchanged between HESS and Williams prior to the murder.   Likewise, information contained within the **subject cellular telephone** will assist law enforcement officials with determining the location of the

3

**subject cellular telephone** at the time the murder occurred on July 26, 2015, in order to potentially identify HESS's whereabouts and/or corroborate or disprove HESS's respective knowledge and/or involvement in the homicide.   It is also critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in the seizure of the phone and its content.   Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

<u>**Investigative Considerations and Techniques**</u>

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A.    Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.    Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.   For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.   Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of

4

the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

C.     Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.   A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.   The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.   Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E.     Wireless providers also maintain business records and subscriber information for particular accounts.   This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the

5

length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber.   In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed).   The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F.    Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records.   This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data.   In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data.   E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers.   Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In addition to records and signaling information from cellular providers, it is also sometimes possible to locate and monitor the movements of a cellular device by directly monitoring signals from the device itself.   Such monitoring is accomplished by using a specific form of pen register, which is referred to herein as a cell-site simulator.   In particular, a cell-site simulator mimics, to a degree, the activities of a cell tower.   Once the general location of the

6

**subject cellular telephone** is identified (e.g., using cell site location records or E-911/precision location information), a cell-site simulator can be used in the vicinity of the **subject cellular telephone** to detect radio signals that are emitted automatically at the time the **subject cellular telephone** is turned on, and periodically thereafter as long as the phone remains on, regardless of whether a call is being made, to communicate with the cellular infrastructure, including cell towers.   These signals contain identifying numbers for the telephone (*e.g.*, the telephone number and Electronic Serial Number ("ESN") or International Mobile Subscriber Identification ("IMSI") number).    The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, can use these cell-site simulator techniques to attempt to identify the location from which the **subject cellular telephone** is operating.    The techniques do not intercept any content of communications, but rather search for signals emitted by the **subject cellular telephone**, which are identified through its identifying numbers (which are already known to law enforcement through other means).    The cell site simulator may cause a temporary disruption of services.    Once the **subject cellular telephone's** signals are identified (typically, through the use of a cell-site simulator, which can be used only when it is in the general proximity of the **subject cellular telephone**), the strength of the signal emitted by the **subject cellular telephone** can be analyzed to ascertain the general direction and location of the signal, which can assist in identifying the general location from which the **subject cellular telephone** is operating.    After the location is determined, data not associated with the operation is deleted.

In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government.    The investigative agency(ies), and other authorized

7

federal/state/local law enforcement agencies, may seek a warrant to compel Sprint LLC , any telecommunication service providers reflected in Attachment 1 (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.   The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may also install and use its own pen register and trap-and-trace devices, including a cell-site simulator, in an effort to locate and monitor the movements of the **subject cellular telephone**.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only.   Furthermore, the criminal conduct being investigated is not limited to the daytime.   Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only.   Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

8

## Conclusion

Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used to promote and facilitate a conspiracy to tamper with a witness and obstruct justice and the requested authorization would provide relevant evidence of the conspiracy. There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 21, United States Code, Sections 841(a) and 846 and Title 18, United States Code, Sections 922(g), 924(c), and 924(j).

9 | 1 | 15
DATE

MARK J. BIONDOLINO
Detective
SLMPD

Sworn to and subscribed before me this _1st_ day of September, 2015.

DAVID D. NOCE
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

9